BALTAZAR RIVERA SIERRA, ETC., Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, HUMACAO PART, JOSÉ DÁVILA ORTIZ, JUDGE, Respondent; INSURANCE COMPANY OF PUERTO RICO, Intervener.

No. O-68-330.    Decided June 11, 1969.

*Carmelo Ávila Medina* and *Roberto Ávila Rivera* for petitioner.

Second Division composed of Mr. Justice Hernández Matos, as Chief Judge of Division, Mr. Justice Santana Becerra, Mr. Justice Dávila, and Mr. Justice Torres Rigual.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

The case of *Baltazar Rivera Sierra et al.* v. *Insurance Company of Puerto Rico et al.*, Civil No. 66-1881, in claim for damages, was prosecuted in the Superior Court, Humacao Part. Dr. Bolívar Patiño had been summoned to appear as witness, and did not do so. What this Court must consider on appeal are the proceedings and determinations of the trial court in connection with an incident of contempt for Dr. Bolívar Patiño's failure to appear.

It involves a death which occurred as a consequence of injuries in an automobile accident. The victim's autopsy was performed by Dr. Bolívar Patiño in the Fajardo District Hospital, an institution where he renders his services as pathologist. For this service Dr. Patiño receives a remuneration of $1,850 monthly.

As a prerequisite for his appearance in court, in order to testify about the autopsy he had performed, Dr. Patiño had demanded plaintiffs to pay him the amount of $1,000. The aforementioned hearing was summoned to determine whether Dr. Patiño was entitled to charge those fees and what would be the reasonable amount. The hearing having been held, the trial court determined that Dr. Patiño was entitled to collect fees for his appearance in court from the plaintiffs, and on December 3, 1968 the trial court entered order granting plaintiffs a term, which expired on January 15, 1969, to deposit in the Office of the Clerk of the court the sum of $400 fixed as compensation "for the appearance of Dr. Bolívar Patiño Arca as witness for the plaintiffs."

On January 24, 1969 this Court entered an order granting the Superior Court, Humacao Part, and the intervener, Insurance Company of Puerto Rico, a term to show cause for which the requested writ of certiorari should not be issued, and the order entered by the trial court in the aforementioned terms be annulled. In answer to the previous order the petitioner himself appeared. The respondent did not appear.

·· Because of the· significance which the question .has for the administration of justice in Puerto Rico, we deem it necessary to transcribe some views about the incident which were produced at the hearing held before the trial court. The plaintiffs assumed the position that they were not bound, as a question of law, to deposit previously any amount whatsoever on account of ·the fees claimed· by the physician. They explained that it did not involve a case in· which the medical services of a person· had been retained to produce expert testimony and testimony based on· opinion adverse to other medical views, also expert and based on opinion. .That it involved the .testimony of· what Dr. Patiño had observed as ·a consequence: of discharging a ·position as pathologist of· the District Hospital and of having performed an autopsy in the ·discharge of that position.

"JUDGE:

·. .Is the question submitted?

MR. ÁVILA:

: The question is submitted.

JUDGE:

., Although at first sight it might seem that the colleague is right, the truth is that he is wrong in his contention. The· question has ·been decided adversely to colleague· by the Supreme Court of Puerto Rico. The Supreme Court of Puerto Rico. has decided that when doctors, even though they work in municipal hospitals with the Government and receive a salary, appear to testify before the courts their fees must be paid as if any other experts were involved. This is a function which exceeds the limits of their position with· the Government of Puerto Rico.

MR. ÁVILA:

I understand, with due respect to Your Honor, that this is so if it involves the rendering of an expert opinion, but not when the person is to testify about certain findings encountered during the inherent function of the position he discharges.

JUDGE:

No, the ruling of the Court is adverse to colleague in that sense, what is more, if the colleague's view is that, and he does

not deposit the amount which the Court justly and reasonably fixes as compensation for the physician, *the court excuses him from testifying in the case,* unless the colleague is ready to pay or deposit or consign in the office of the court's clerk an amount which the Court will determine as just and reasonable for his appearance in court." (Italics ours.)

While testifying, Dr. Patiño Arca expressed himself in the following manner, according to the record:

"Q—Do you remember having performed an autopsy on who in life was Lydia Esther Rivera Cruz, who died on June 19, 1966?

A—I performed the medicolegal autopsy exactly on June 20, 1966 at twelve-fifteen past meridian.

Q—It should be understood by that, that it was during the noon hours.

A—After my working hours.

Q—Fifteen minutes after working hours.

A—I began to work fifteen minutes after I finished my regular hours.

Q—Well. And you also finished after working hours?

A—Possibly, I do not remember the time it took me.

Q—Were you paid for that work?

A—I received twenty-five dollars according to the voucher I have here.

Q—Doctor, are you in this court today during working hours?

A—Today I am absent from the hospital, I have not gone to the hospital because I have been summoned to appear in court.

Q—For what time were you summoned to appear in court?

A—I was summoned to appear at two in the afternoon.

Q—And in the morning did you go to the hospital?

A—No, because I was here on another criminal trial, therefore I have been here all day.

Q—But you are not absent from the hospital on account of being here on this case.

A—Because of the court's summons.

Q—Because of the summons for this case?

A—At two in the afternoon.

Q—That is to say you were not going in any event to work at the hospital this morning?

A—Because I was summoned for another case.

Q—Therefore, then the reason for not going to the hospital is not this case, but the previous case.

A—No, you do not understand me, the other case was heard this morning.

Q—For that reason.

A—Now I have returned at two in the afternoon summoned by the court.

Q—And this morning did you go to the hospital?

A—I came here, am I not telling you that I was here on another criminal case.

Q—Summoned for another case in the morning.

A—For another criminal case, I was all morning hearing another criminal case, then I went to lunch, and I have returned at two in the afternoon summoned for this case.

Q—Do you collect from the Government for the morning?

A—I am bound by law to attend the courts.

Q—My question is not whether you are bound but whether you collect?

A—I collect, the court pays me when I appear, attend, and testify and if I do not, I am also paid for coming.

Q—The important thing is that you come and get paid, correct?

A—That I come and get paid is correct, yes sir.

Q—How much are you paid?

A—Here, I am paid according to a rate of 1912 which establishes ten dollars for expert testimony in criminal cases.

Q—Nothing more Your Honor.

JUDGE:

Q—Doctor, how much do you think is the just and reasonable value of your appearance in court during today's afternoon to testify as witness for the plaintiff in this case?

A—Your Honor, up to July 1, 1967 I used to charge for these appearances $400, there is evidence in this court, there is a decision of this court in a controversy which was provoked precisely with Mr. Manuel Orraca Torres on account of the amount which I charged. Mr. Ramos Cabán has paid me in this same court that amount of $400. Mr. Mariano Ríos has paid me that amount in the Guayama Court. Mr. Oscar Brizzie, who is here, could not pay me, but he talked with me in my office and communicated

with me under other circumstances, also Mr. Julio C. Rivera, that is, that that was a fixed amount which I had established up to the month of July 1967.

Mr. Carmelo Ávila Medina knows that I charge that amount, because in a case for which he summoned me in 1961, and which he paid in 1965, after claiming payment for four years the $400 appeared, I have here communications addressed to Mr. Ávila and answers from him which I can offer the court, where it appears, since then, 1961, that I charged that amount for my appearance.

Consequently, I believe that if my claim to charge is going to be adjusted to what I had estimated until 1967 it would be $400, but after 1967 up to the present time, when I, making a tremendous effort obtained my specialization as Forensic Pathologist, that is, that I went a bit further into the field which is already contiguous with the field of attorneys, lawyers, I established that I was charging too little, because also in Puerto Rico, from that time up to date, the expectancy of lawyers in their collection of fees in civil cases had risen.

In this case specifically I found out through an employee who works under my orders, who is a relative of one of the defendants, that a complaint had been filed for $150,000 and that the attorneys were conducting it for 45% of the recovery in that case.

Consequently, I asked, and requested in writing the Ávila's Law Office $1,000 for my appearance in court. They never answered, Ávila's Law Office and its representative, Mr. Roberto Ávila, present herein, did not answer that letter which was signed by me on May 20, 1968 and it was pretended that I come compulsively by a court summons on the 14th.

Therefore, Your Honor, in answer to your question, I believe if the reality is adjusted to the present and he cannot pay me the $1,000 I charge, whatever Your Honor fixes for me will be welcomed, any amount whatever because it will come from Your Honor, whom I respect very much.

MR. ÁVILA:

If I am allowed one question, or several questions.

Q—Then I should understand that you charge according to what you expect the plaintiffs will recover from the complaint?

A—No, Mr. Attorney. I have established since July 1967 that in claims up to fifteen thousand dollars I charge $500, and over that amount $150,000,[1] paid in advance with reasonable time to prepare the case to avoid what frequently happens with attorneys who have requested my services, that they are very difficult to pay, and sometimes impossible, or they pay whatever they want as has always been the case with Mr. Carmelo Ávila Medina, and the Ávila's Law Office, I have the vouchers which support this position and correspondence had in the cases that I have conducted, which luckily for me have only been two.

Q—You answered my question, that you charge in proportion to the amount of the claim in the suit.

A—Exactly.

Q—Then, nothing more.

JUDGE:

You may retire Doctor.

Any other evidence?

MR. ÁVILA:

No evidence, Your Honor.

JUDGE:

Is the question submitted?

MR. ÁVILA:

The question is submitted.

JUDGE:

The court deems, in view of Dr. Bolívar Patiño Arca's testimony, that the sum of $400 is the just and reasonable compensation as fees for Dr. Bolívar Patiño Arca as witness for the plaintiffs in this action.

We should reiterate, that is to say, we should ratify that an action of criminal nature is not involved but an action of civil nature, and that the testimony of Dr. Bolívar Patiño Arca has shown that he performed the autopsy after working hours, and that he has appeared in court by order of the court, subject to the amount the court would determine and decide as the just and reasonable amount of his fees.

The court deems that the sum of $400 as of today is a just and reasonable amount as fees for a Forensic Pathologist who

---

[1] It so appears in the original.

has had his board, and of the ·. . ., of Dr. Bolívar Patiño Arca's prestige.

MR. ÁVILA:

Well, Your Honor, I do not have the money in order to deposit it, and I believe that I will not deposit it, I will better withdraw from the case before having to deposit the $400.

JUDGE:

Then the plaintiffs are not in a position to . . .

MR. ÁVILA:

Of depositing that amount at this moment.

JUDGE:

Plaintiffs are not in a position to deposit, or consign this sum.

MR. ÁVILA:

At this moment.

JUDGE:

And when could you deposit it?

MR. ÁVILA:

I would request, Your Honor, to be granted sixty days in order to confer with all the plaintiffs who are several persons.

JUDGE:

The court wants to point out the following, wants to warn the colleagues about the following: The court will not hear the testimony of Dr. Bolívar Patiño Arca as long as his fees are not deposited.

MR. ÁVILA:

I want to be notified of this decision in writing."

.    .    .    .    .    . .,    .    . .    .

"JUDGE:

Excuse me, Ávila Rivera has stated, has expressed his firm purpose of not depositing this amount because he believes that at law he is not bound to do so.

MR. ÁVILA:

That is so, Your Honor.

JUDGE:

The court respects that view, but the court will not hear Dr. Bolívar Patiño Arca's testimony until his fees are deposited."

In the course of the hearing the trial court mentioned several times that its ruling was supported by law and by

decisions of this Court. It did not mention specifically any legal provision.

In criminal prosecutions the Constitution of the Commonwealth of Puerto Rico grants the right to obtain the compulsory appearance of witnesses in its favor. We are before a civil proceeding. Section 7 of the Code of Civil Procedure (1933 ed.) provides that every court has power: ". . . 6. To compel the attendance of persons to testify in an action or proceeding pending therein in the cases and manner provided in this Code." Section 28 of the same Code provides that every judicial officer has power: "3. To compel the attendance of persons to testify in a proceeding before him in the cases and manner provided in this Code."

Section 38 of the Law of Evidence prescribes that all persons, without exception, otherwise than is specified in §§ 39 and 40, who can perceive, and, perceiving, can make known their perceptions to others, may be witnesses.

Sections 110 to 122 of the Law of Evidence regulate the means of production of witnesses. Section 112 provides that the service of a summons or subpoena will be made by showing the original and delivering a copy or a ticket containing its substance to the witness personally, and "giving or offering to him at the same time, if demanded by him, the fees to which he is entitled *for travel to and from the place designated and one day's attendance there.*"

Section 114 of the law provides that a witness is not obliged to attend as a witness before any court, judge, justice or any other officer *out of the district in which he resides,* unless the distance be less than thirty miles from his place of residence to the place of trial.

Rule 40.2 of the Rules of Civil Procedure of 1958 provides that the court which has commanded the person to whom the subpoena is directed to produce the books, papers, documents or tangible things, may, upon motion of a party, condition denial of the motion upon the advancement by the person in

whose behalf the subpoena is issued *of the reasonable cost of producing the books, papers, documents, or tangible things.*

Rule 40.3 which follows provides that the service of a subpoena upon a person to appear shall be made by delivering a copy thereof to such person, *"and by tendering to him the fees for one day's attendance and the mileage allowed by law."* The Commonwealth or its officers need not tender fees or mileage.

Section 327 of the Code of Civil Procedure which refers to fees and costs provides that the party *in favor of whom a final judgment or decision is rendered* shall be allowed costs, which shall comprise: ". . . (3) Two (2) dollars for each witness and for each day of attendance at court, plus mileage to and from his residence; Provided, That the court shall, considering all attendant circumstances, fix the reasonable compensation for the attendance of *experts as witnesses."*

By an Act of March 12, 1908 it was provided that physicians now practicing in Puerto Rico, whatever may be the offices held by them shall, upon being called by the Courts or their authorized agents to give assistance in case of wound, injury, poisoning, performance of autopsies, or to report on any matter coming under the administration of justice, be considered as experts, and shall receive from the People of Puerto Rico such fees as may be established by a tariff prepared therefor, and they shall also receive from the Treasury of Puerto Rico such compensation for traveling expenses as provided in similar cases for government officials.[2]

It seems that the trial court's pronouncements to the effect that this Court has decided what it ruled, and that the

---

[2] This act was interpreted by the Secretary of Justice in the opinion of November 18, 1957—Opinions of the Secretary of Justice, Vol. XXVIII—in the sense that it was not adverse to § 177 of the Political Code inasmuch as it involves a part-time appointment; and that the Government of the Capital could pay the physicians for their appearance before a court at the request of the municipality as experts in favor of the municipality, in cases for damages against said municipality.

law requires the. previous deposit of the fees it fixed to. the physician as a condition in order to request him to give testimony, are not supported either by law or by a ruling of this Court.

In *Verdejo* v. *Lecumberri*, 57 P.R.R. 514 (1940), applying § 327 of the Code of Civil Procedure, as amended by Act No. 94 of 1937, which refers to the award of costs to a successful party, we said that in granting $2 for each witness and for each day of attendance at court, plus mileage in going from and returning to his residence, said section made no exception in the case of experts; and that whether or not such an. exception should be made was a question for the Legislature.

Subsequently, in *Costas* v. *G. Llinás & Co.*, 66 P.R.R. 688 (1946), we reaffirmed what we said in *Lecumberri* and stated again that the experts, since they are witnesses, are included in subdivision 3 of § 327 as amended in 1937, which fixes the amount of $2 as the compensation for each day of attendance at court. We noted that apart from this subdivision experts were included in no other provision, for in order that they could be embraced by subdivision 6 as it was alleged, their fees would have to be a disbursement subject to schedule, and they were not. In conformance with the foregoing, the case of *Durán* v. *Durán*, 55 P.R.R. 615 (1939) was overruled therein. In the *Durán* case we had held as correct an item in a bill of costs of $100 as fees for a handwriting expert. We justified at that time the item on the ground that the evidence had shown that the handwriting expert, before the date set for the trial, had spent a day and a half in the District Court of Ponce studying and comparing the signature and writing of the will with other signatures and writings of the testator accepted as authentic. Also that the expert had gone to Juana Díaz with appellee's attorney to examine other documents written by the testator, and he had attended the trial which lasted three days even though not consecutive.

We said in *Llinás* that subsequent to the case of Durán we had made a study of § 327 in *Colón* v. *Central Cambalache*, 65 P.R.R. 145 (1945), and we had reached the conclusion that the expenses and disbursements expressly comprised in the different subdivisions of § 327 were the only ones that could be considered as costs.

Under the view of *Durán* v. *Durán*, decided on November 17, 1939, we decided several weeks later, on January 31, 1940, the case of *Heirs of Mangual* v. *Hastings*, 56 P.R.R. 20, where an item of $25 as professional fees of physician, Dr. Comas, was included in a memorandum of costs. This case involved an action in claim for damages as a result of an automobile accident. We said, rejecting said item: "It only remains for us to consider the $25 item of the memorandum of costs allowed the plaintiffs as professional fees paid to witness Dr. Comas. This witness, as appears from the record, was called to the stand to testify about the condition of Mangual on reaching the Municipal Hospital of San Juan, the treatment prescribed by him and his death. His testimony regarding the above particulars did not require from him any special preliminary preparation for testifying in the case. In such circumstances a physician, like any other professional man, is considered to be an ordinary witness and should not receive any other compensation than that provided in the schedule of fees for witnesses, that is, a $2 per diem. See section 327 of the Code of Civil Procedure."

Even though the decision in the *Heirs of Mangual* case relies literally on § 327, it could have been impliedly established that if it had been a question of a testimony which would have required from the physician witness special preliminary preparation in order to testify, an amount in excess of the $2 could have been awarded to plaintiffs. In fact, the *Heirs of Mangual* case only anticipated the legal situation which was later perpetuated by positive law, when subdivi-

sion 3 of § 327, as it governs at the present time, was amended in 1951, and by Act No. 411 of May 11 of said year.

Both § 327, and all the decisions previously cited, center on the compensation to which a *successful party* is entitled, after judgment has been rendered in its favor. They do not involve the situation of the case at bar in which a party is denied the court's coercive power to make a witness appear, to which it is entitled by law, if the price in money which the witness fixed for said appearance and which the trial court ordered to be paid without having heard the testimony to be offered and without having weighed the nature and usefulness of same, is not previously deposited and paid to said witness.

The record shows that it involves a witness who was placed by the circumstances in the course of the *chain of events* related to the litigious question, and who knew and perceived part of them through his senses.

Dr. Patiño Arca testified that in addition to his basic salary in the District Hospital of Fajardo, where he worked full time, the government paid him at a rate of $25 for each autopsy performed, and that this payment represented for him approximately the sum of $500 monthly over his basic salary of $1,350. The performance of autopsies was a function paid by the government.

From his testimony it undoubtedly appears that the witness had established a schedule or rate for testifying in court which was consistent, not with the effort or intellectual or material work connected with testimony to be rendered in a certain case, but with the total sum of the amount claimed, and in litigation and, equating his position as witness with that of the attorneys, he believed to be entitled to also participate in the benefits of the litigation in agreement with the greater participation, which he could see the attorneys were obtaining.

To sanction these views as, conscious or unconsciously, they could have been legalized by the judgment of the court, would be to divest the administration of justice in this type of litigation of its correct sense of *remedial* social function— pursuant to § 1802 of the Civil Code, and in agreement with the judicial function in itself—and to inject it with an extraneous sense of industry or speculation over the tragedy and human suffering which give rise to these suits. An only eyewitness of the events, on whom the success of the claim would absolutely depend, could also want to have a share of the benefits.

The authority exercised by the court may lead to the frustration of justice, in insolvent litigants or litigants unable to raise funds. Precisely, in order to avoid that justice be thwarted it has been accepted as good, notwithstanding the accentuated discrepancies of views as to its virtuality that an attorney may charge his fees according to the outcome of the litigation and on a percentage of the recovery.[3] Even thus the practice should be effectively watched and supervised by the courts or Legislature to avoid that the sense of reasonable remuneration for professional effort made be lost and that it may acquire the hue of a mere source of speculative profit. It would be unproductive now, when society has recognized the duty and necessity of endowing a poor or destitute litigant with free legal aid in civil matters so that justice will not be thwarted, to allow that justice be frustrated because that litigant lacks the economic means to pay the price which a witness requests in order to testify.

We are not deciding whether the price which the witness requires from these petitioners in order to reveal in court what came to his knowledge in the course of an autopsy or in the discharge of his other duties as physician in a government institution, and which at bottom does not have any other

---

[3] Youngwood, *The Contingent Fee*, 28 The Modern L. Rev. 330 (1965).

connotation but that of being the selling price, for the use in court, of the information or knowledge thus obtained, is lawful or unlawful. We are not prejudging this question in one sense or the other.

We are deciding that he is not entitled to use the coercive power of the courts as a compelling instrument for the collection of that price against the alternative of depriving a litigant of the right to have that same coercive power of the court granted by law, to compel a witness to appear and render testimony in court.

The order of the Humacao Part of the Superior Court of December 3, 1968 which denied petitioners the right to obtain Dr. Patiño Arca's appearance in court to render testimony in the course of the trial unless he was previously paid the amount of $400 will be set aside. The foregoing is without prejudice of the right of the prevailing party, to have the court fix a reasonable amount for such appearance in the case of expert witnesses, pursuant to § 327 of the Code of Civil Procedure, and without prejudging the right which Dr. Patiño Arca may believe he has to settle and contract with the interested party, the payment of an amount of money for his testimony.

The record will be remanded for further proceedings not inconsistent with the pronouncements made herein.